IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, SECRETARY | § | |
| OF LABOR, UNITED STATES | § | |
| DEPARTMENT OF LABOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-5394 |
| | § | |
| DON R. JOHNSON, CONTINUUM | § | |
| HEALTHCARE SYSTEMS, INC. | § | |
| GROUP HEALTH INSURANCE PLAN, | § | |
| and CONTINUUM HEALTHCARE | § | |
| SYSTEMS, INC. SECRET TO | § | |
| SUCCESS 401(K) PLAN, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Plaintiff Elaine L. Chao, Secretary of Labor,
United States Department of Labor's Motion for Summary Judgment
(Document No. 23).[1]   Defendant Don R. Johnson has not filed a

---

[1] On August 18, 2005, Defendant Don R. Johnson filed a
Suggestion of Bankruptcy and Motion to Stay the Scheduling Order,
asserting that his Chapter 7 bankruptcy petition automatically
stays this case. *See* Document No. 29. Because the Secretary is
exercising her police or regulatory power in this ERISA enforcement
action, however, the automatic stay imposed by 11 U.S.C. § 362(a)
does not apply. *See* 11 U.S.C. § 362(b)(4) (exempting from
automatic stay the commencement or continuation of an action or
proceeding by a governmental unit to enforce such governmental
unit's police or regulatory power); Dole v. Hansbrough, 113 B.R.
96, 97-98 (D.D.C. 1990) (holding that Labor Secretary's ERISA
enforcement action against debtor fell within scope of
§ 362(b)(4)); *see also* 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][b][iii]
(15th ed. 2001) ("[A]n action by the Department of Labor to enforce
the provisions of ERISA and to assess penalties or obtain

response, and in accordance with Local Rule 7.4, the motion is deemed unopposed.[2]   After having reviewed the motion and the applicable law, the Court concludes that the motion should be granted.

## I.   Background

The Secretary of Labor of the United States Department of Labor Elaine L. Chao (the "Secretary") brings this action under Title I of the Employee Retirement Income Security Act ("ERISA"). The Secretary alleges that Defendant Don R. Johnson ("Defendant"), Chief Executive Officer of Continuum Healthcare Systems, Inc. and its various subsidiaries (collectively, "Continuum"), breached fiduciary duties owed to the participants and beneficiaries of the Continuum Healthcare Systems, Inc. Secret to Success 401(k) Plan (the "401(k) Plan") and the Continuum Healthcare Systems, Inc. Group Health Insurance Plan (the "Health Care Plan") (collectively, the "Plans").   According to the Secretary, Defendant was the majority shareholder in Continuum, a closely-held Texas corporation in the business of providing residential substance abuse treatment,

injunctions may be excepted from the automatic stay under section 362(b)(4)."). The Motion to Stay (Document No. 29) is therefore DENIED.

[2] Although the Continuum Healthcare Systems, Inc. Secret to Success 401(k) Plan and the Continuum Healthcare Systems, Inc. Group Health Insurance Plan are also named as defendants in this action, the Secretary explains the Plans are joined pursuant to Fed. R. Civ. P. 19(a) "solely to assure that complete relief can be granted." *See* Document No. 1.

and Defendant maintained an ownership interest in each of the Continuum subsidiaries. *See* Document No. 21 exs. D ¶¶ 2-7; E at 18-32. All employees of Continuum, including the employees of its subsidiaries, were entitled to participate in the Plans. *See* Document No. 22 ¶¶ 10, 29.

In 2002, pursuant to an employee complaint, the Employee Benefit Security Administration ("EBSA") began investigating the 401(k) Plan. Id. ¶ 2. EBSA Investigator Lana J. Robertson ("Robertson") discovered that although Continuum began making 401(k) Plan payroll deductions in August 1999, Continuum did not remit its first deposit to the 401(k) Plan until February 2000. *See* id. 22 ¶¶ 15-16. Moreover, company records revealed that Continuum had failed to remit to the 401(k) Plan approximately $4,535.83 in contributions that were withheld from participating Continuum employees' paychecks. Id. ¶¶ 17-20. According to Robertson, the unremitted 401(k) Plan contributions were retained by Continuum in its general operating accounts and were used to pay corporate debts. Id. ¶¶ 23-26.

Robertson also investigated the Health Care Plan, a group health care insurance policy provided by PacifiCare of Texas, Inc. ("PacifiCare") pursuant to its Group Subscriber Agreement (the "Agreement") with Continuum. Id. ¶¶ 27. Robertson discovered that PacifiCare notified Continuum in writing no less than six times that the Agreement was in jeopardy due to Continuum's failure to

pay the premiums required under the Agreement and further informed Continuum that the Health Care Plan would be terminated if PacifiCare did not receive lump-sum payments for back due premiums by specified dates.  Id. ¶ 32.  Continuum failed to pay all of the delinquent premiums and, in accordance with the terms of the Agreement, PacifiCare notified Continuum that it was terminating the Health Care Plan effective July 1, 2000, the last date for which PacifiCare received premiums.  Id. ¶ 32.  Despite receiving this termination notice, Continuum failed to inform participating Continuum employees that they no longer had health insurance and continued to withhold Health Care Plan premiums from those employees' paychecks.  Id. ¶¶ 34-35, 38.[3]  Robertson determined that between July 1, 2000, and December 20, 2000, Continuum deducted $19,632.77 in Health Care Plan premiums from participating employees' paychecks but neither remitted those monies to PacifiCare nor refunded the employees.  Id. ¶¶ 35-36, 39.  Instead, the funds remained in Continuum's corporate accounts and were used to fund company operations.  Id. ¶ 40.  On August 1, 2001, Continuum filed for Chapter 7 bankruptcy protection in the Southern District of Texas.  Id. ¶ 41.

_____

[3] Because Continuum failed to notify participating Continuum employees that their health insurance had been terminated, the employees, believing themselves to be insured, incurred more than $90,000 in unpaid health care claims during the period from July 1, 2000, through December 20, 2000.  Document No. 22 ¶ 38.

In her Complaint, the Secretary alleges that Defendant's conduct in failing to segregate the assets of the Plans from Continuum's corporate assets, failing to remit the Plans' assets to the Plans, transferring the Plans' assets to a party in interest, and otherwise failing properly to administer and manage the Plans violated ERISA's fiduciary duty provisions.   Document No. 1. Accordingly, the Secretary seeks an injunction enjoining Defendant from violating ERISA, enjoining Defendant from serving as a fiduciary to any ERISA-covered employee benefit plan, and ordering Defendant to restore $5,824.61 to the 401(k) Plan and $25,211.16 to the Health Care Plan.[4]

## II.   <u>Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

---

[4] These amounts represent the amounts Continuum withheld from its employees' paychecks and failed to remit to the Plans, along with interest at the underpayment rate set forth in § 6621(a)(2) of the Internal Revenue Code, 26 U.S.C. § 6621(a)(2).   Document No. 22 ¶¶ 20-21, 36-37.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary

judgment if it believes that "the better course would be to proceed
to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

A properly and sufficiently supported motion for summary
judgment should be granted unless, pursuant to Rule 56(e), the
opponent of such motion "set[s] forth specific facts showing that
there is a genuine issue for trial." *See* <u>Gibson v. Rich</u>, 44 F.3d
274, 277 (5th Cir. 1995) (citing <u>Anderson</u>, 106 S. Ct. at 2511).  A
motion for summary judgment "cannot be granted simply because there
is no opposition." <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360,
362 n.3 (5th Cir. 1995).  When no response is filed, however, the
Court may accept as undisputed the facts set forth in support of
the unopposed motion and grant summary judgment when a prima facie
showing for entitlement to judgment is made. *See* <u>Eversley v. MBank
Dallas</u>, 843 F.2d 172, 174 (5th Cir. 1988); <u>Rayha v. United Parcel
Serv., Inc.</u>, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996) (Gilmore,
J.).


III.  <u>Discussion</u>


Section 502(a)(2) of ERISA authorizes the Secretary to bring
a civil action for appropriate relief under ERISA § 409.  29 U.S.C.
§ 1132(a)(2).  Section 409 provides in relevant part:

> Any person who is a fiduciary with respect to a plan who
> breaches any of the responsibilities, obligations, or
> duties imposed upon fiduciaries by this subchapter shall
> be personally liable to make good to such plan any losses
> to the plan resulting from such breach, and to restore to

such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Id. § 1109(a). In addition, § 502(a)(5) of ERISA empowers the Secretary to bring a civil action "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of [ERISA] or the terms of the plan." Id. § 1132(a)(5). Thus, in order to prevail on her claims against Defendant, the Secretary must establish: (1) that the Plans were "employee benefit plans" covered by ERISA; (2) that Defendant was a fiduciary to the Plans; and (3) that Defendant breached fiduciary duties imposed by ERISA or the Plans.

A.   The Plans Are Covered by ERISA

Pursuant to ERISA § 4(a)(1), ERISA applies to any "employee benefit plan"--which the statute defines as an "employee pension benefit plan" or an "employee welfare benefit plan"--that is established or maintained by "by an employer engaged in commerce or in any industry or activity affecting commerce." 11 U.S.C. §§ 1002(3), 1003(a)(1).[5]   ERISA § 3(2)(A) provides that an

---

[5] It is uncontroverted that Continuum was an employer engaged in commerce or in an industry or activity affecting commerce.

"employee pension benefit plan" or "pension plan" includes "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to termination of covered employment or beyond. . . ." 29 U.S.C. § 1002(2)(A).  The 401(k) Plan's Summary Plan Description ("SPD") describes the 401(k) Plan as a "salary reduction plan" funded by participating eligible employees' salary contributions.  Document No. 21 ex. F at 1.  The purpose of the 401(k) Plan "is to reward eligible employees for long and loyal service by providing them with retirement benefits." Id.  Accordingly, the undisputed summary judgment evidence is that the 401(k) Plan is an "employee pension benefit plan" covered by ERISA.

Similarly, ERISA § 3(1) defines an "employee welfare benefit plan" or "welfare plan" to include "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment

. . . ." 29 U.S.C. § 1002(1). Under the Agreement, Continuum procured from PacifiCare a health insurance policy to provide certain health care benefits for Continuum's employees and their dependants. *See* Document No. 21 ex. H. at 1. Specifically, Continuum procured "a Health Plan [that] arranges, through contracts with physicians, physician groups, hospitals, and other health care providers, for the provision of medical, hospital, and other health care services to persons who are enrolled as Members." Id. The undisputed summary judgment evidence is that the Health Care Plan is an "employee welfare benefits plan" within the meaning of ERISA. Therefore, both the 401(k) Plan and the Health Care Plan are "employee benefits plans" governed by ERISA.

B.   Defendant Is a Fiduciary to Both Plans

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Defendant admits that he was a fiduciary to both Plans. *See* Document No. 21 exs. D ¶¶ 9-13, 135-39; F at 3. Defendant was the named trustee to the 401(k) Plan, and by virtue of this status, he had "'discretionary authority or discretionary responsibility in the administration' of the [401(k) Plan]," such

that he was a fiduciary.  29 C.F.R. § 2509.75-8, at D-3 (quoting 29 U.S.C. § 1002(21)(A)(iii)); *see also* 29 U.S.C. § 1103(a) ("[T]he trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan").

Moreover, the undisputed facts reveal at least some of the Continuum employees' 401(k) Plan contributions and Health Care Plan premiums were not remitted to the respective Plans but instead remained in Continuum's corporate bank accounts.  *See* Document Nos. 21 ex. D ¶¶ 14-134; 22 ¶¶ 20, 23-26, 36, 40.  Defendant was authorized to sign checks on Continuum's accounts and made decisions approving expenditures and finances regarding payment of corporate debts from the accounts, such that he exercised authority and control over Continuum's corporate accounts.  Document No. 21 ex. E at 60, 69-70.  Defendant therefore exercised authority and control over the Plans' assets and is a fiduciary to both Plans. *See* LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (holding that president of closely owned corporation was fiduciary because he exercised authority over plan assets by commingling plan assets with company's general assets and then using plan assets to pay company's creditors); IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997) ("'Any' control over disposition of plan money makes the person who has the control a fiduciary").

C.   <u>Defendant Breached Fiduciary Duties Owed to the Plans</u>

The Secretary alleges that Defendant violated ERISA in the
following respects: (1) by failing to discharge his fiduciary
duties with respect to the Plans solely in the interests of the
participants and beneficiaries and for the exclusive purpose of
providing benefits to participants and their beneficiaries, in
violation of ERISA § 404(a)(1)(A); (2) by failing to discharge his
fiduciary duties to the Plans with the care, skill, prudence, and
diligence under the circumstances that a prudent person acting in
a like capacity and familiar with such matters would use in the
conduct of an enterprise of a like character and with like aims in
violation of ERISA § 404(a)(1)(B); (3) by causing the Plans to
engage in transactions which he knew or should have known
constitute a direct or indirect transfer to, or use by or for the
benefit of, a party in interest, assets of the Plans, in violation
of ERISA § 406(a)(1)(D); (4) by dealing with the Plans' assets in
his own interest or for his own account in violation of ERISA
§ 406(b)(1); (5) by engaging in transactions involving the Plans on
behalf of himself and/or Continuum, a party in interest, whose
interests were adverse to the interests of the Plans or their
participants and beneficiaries, in violation of ERISA § 406(b)(2);
and (6) by failing to cause the Plans' assets to be held in trust
and permitting the assets to inure to the benefit of Contiuum, in

violation of ERISA §§ 403(a) and (c)(1).[6]  Each of these alleged breaches will be discussed in turn.

### 1.  ERISA § 404(a)(1)(A)

ERISA § 404(a)(1)(A) imposes a duty of loyalty, requiring the fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan. . . ."  29 U.S.C. § 1104(a)(1)(A).  A fiduciary breaches this duty whenever he acts to benefit his own personal interest or to benefit the interests of a third party.  *See* JAMES F. FORDEN ET AL., HANDBOOK ON ERISA LITIGATION § 3.03[A], at 3-54 (2005) (collecting cases).

In interpreting the duty of loyalty, the Seventh Circuit has noted that "[d]eliberately favoring the corporate treasury when administering . . . a plan is inconsistent with [ERISA § 404(a)(1)(A)]."  *See* Frahm v. Equitable Life Assurance Soc'y of the United States, 137 F.3d 955, 959 (7th Cir. 1998).  Here, the undisputed facts reveal that Defendant maintained assets of the Plans in Continuum's corporate accounts and then used those assets

---

[6] Although the Secretary also alleges in her Complaint that Defendant failed to discharge his duties in accordance with the documents and instruments governing the Plans in violation of ERISA § 404(a)(1)(D), the Secretary has relinquished this claim in her motion for summary judgment.  *See* Document No. 21 at 18 n.2.

to pay Continuum's general operating expenses and for other non-Plan purposes rather than for the benefit of the Plans. *See* Document Nos. 21 exs. D ¶¶ 14-134, E at 60, 69-70; 22 ¶¶ 20, 23-26, 36, 40. Thus, Defendant did not merely favor the corporate treasury over the Plans but rather treated the Plans' assets as the corporate treasury. *See* <u>Chao v. Crouse</u>, 346 F. Supp. 2d 975, 987 (S.D. Ind. 2004). Viewing these facts in a light most favorable to Defendant, it is established as a matter of law that that Defendant breached the duty of loyalty imposed by ERISA § 404(a)(1)(A). *See*, *e.g.*, <u>Yeseta v. Baima</u>, 837 F.2d 380, 386 (9th Cir. 1988) (holding that withdrawal of plan assets to pay employer's operating expenses violated § 404(a)(1)(a)); <u>Crouse</u>, 346 F. Supp. 2d at 987 (holding that fiduciary violated § 404(a)(1)(a) by using plan assets in the best interest of the company rather than the plan); <u>Chao v. Stuart</u>, No. Civ. H-04-1115, 2005 WL 1693939, at *4 (S.D. Tex. Jul. 20, 2005) (Johnson, Mag.) (holding that CEO violated § 404(a)(1)(a) by using payroll deductions to fund company business operations and pay corporate debts instead of investing them for the benefit of the plan).

2. <u>ERISA § 404(a)(1)(B)</u>

ERISA § 404(a)(1)(B) requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); Morse v. Stanley, 732 F.2d 1139, 1145 (2d Cir. 1984) ("[ERISA § 404(a)(1)(B)] imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation."). The uncontested summary judgment evidence is that Defendant failed to segregate from the general assets of Continuum the 401(k) Plan contributions withheld from participating Continuum employees' paychecks and further failed to remit the employee contributions to the 401(k) Plan. See Document Nos. 21 exs. D ¶¶ 14-134; 22 ¶¶ 20, 23-26. Moreover, upon learning that there were issues related to Continuum's remittance of employee contributions to the 401(k) Plan, Defendant admittedly took no affirmative steps to determine whether the contributions were in fact being remitted to the 401(k) Plan. See Document No. 21 ex. E at 53-54. This conduct violated the duty of care imposed by ERISA § 404(a)(1)(B). See Barker v. Am. Mobil Power Co., 64 F.3d 1397, 1402-03 (9th Cir. 1995) (holding that fiduciary breached duty of care by failing to investigate suspicions that plan was not being properly funded and maintained); Prof'l Helicopter Pilots Ass'n v. Denison, 804 F. Supp. 1447, 1452-54 (M.D. Ala. 1992)

(fiduciary breached duty of care by failing to segregate and pay to the plan amounts withheld from employees' paychecks).

Defendant acted with similar disregard with respect to the Health Care Plan. The summary judgment evidence reveals that Defendant habitually failed to remit the employees' Health Care Plan premiums to PacifiCare in a timely manner, eventually causing PacifiCare to terminate the Group Subscriber Agreement; that Continuum continued to collect Health Care Plan premiums from participating Continuum employees after their health insurance had been terminated; and that Defendant failed to inform Continuum employees that PacifiCare terminated the Group Subscriber Agreement, causing those employees to incur more than $90,000 in unpaid health care claims. *See* Document Nos. 21 exs. I-K; 22 ¶¶ 29-38. In sum, Defendant failed to discharge his duties in connection with the Health Care Plan in a prudent manner and solely in the interests of the Plan and its participants, and this conduct violated ERISA § 404(a)(1)(B). *See* Mira v. Nuclear Measurements Corp., 107 F.3d 466, 471 (7th Cir. 1997) (holding that fiduciary's failure to pay health insurance premiums and failure to inform employees of lapse in their insurance coverage violated duty of care); McFadden v. R&R Engine & Mach. Co., 102 F. Supp. 2d 458, 468-69 (N.D. Ohio 2000) (same).

3.   ERISA § 406(a)(1)(D)

Section 406(a) of ERISA prohibits transactions between a plan
and a "party in interest," which ERISA § 3(14) defines to include
"any fiduciary (including, but not limited to, any administrator,
officer, trustee, or custodian)," any employer whose employees are
covered by the plan, and any officer, director, or majority owner
of an employer whose employees are covered by the plan.  29 U.S.C.
§ 1002(14).  Specifically, ERISA § 406(a)(1)(D) provides that "[a]
fiduciary with respect to the plan shall not cause the plan to
engage in a transaction, if he knows or should know that such
transaction constitutes a direct or indirect . . . transfer to, or
use by or for the benefit of, a party in interest, of any assets of
the plan."  Id. § 1106(a)(1)(D).[7]  By maintaining Plan assets in
Continuum's general corporate accounts and then using those funds
to pay Continuum's operating expenses and for other non-Plan

_____

[7]   That the amounts withheld from Continuum employees'
paychecks were plan assets is uncontroverted.  ERISA regulations
define "plan assets" to include amounts "that a participant or
beneficiary pays to an employer, or amounts that a participant has
withheld from his wages by an employer, for contribution to the
plan as of the earliest date on which such contributions can
reasonably be segregated from the employer's general assets."  29
C.F.R. § 2510.3-102(a).  In other words, contributions deducted
from an employee's wages become plan assets as soon as they can
feasibly be segregated from the employer's general assets, but not
more than fifteen days after withholding in the case of a pension
plan and not more than ninety days after withholding in the case of
a welfare plan.  Id. § 2510.3-102(b)(1), (c).  Such contributions
become plan assets even if the employer fails to remit the
contributions to the plan.  See United States v. Grizzle, 933 F.2d
943, 947 (11th Cir. 1991)

17

purposes, Defendant engaged in transactions that constituted direct transfers of the Plans' assets for the benefit of a party in interest, namely Continuum. *See* Pension Benefit Guar. Corp. v. Solmsen, 671 F. Supp. 938, 945-46 (E.D.N.Y. 1987) (holding that fiduciary violated § 1106(a)(1)(D) by failing to forward employee contributions to the plan and allocating available monies to corporate expenses); *accord* Stuart, 2005 WL 1693939 at *5; Chao v. Sauve, No. C 03-2041, 2004 WL 503819, at *3 (N.D. Iowa Mar. 16, 2004). At a minimum, Defendant should have known that paying corporate expenses from Continuum's general corporate accounts without first ensuring that assets of the Plans had been transferred to the Plans caused those assets to be used by and for the benefit of Continuum. Thus, Defendant violated § 406(a)(1)(D).

4.   ERISA § 406(b)(1) and (2)

Section 406(b) of ERISA prohibits a fiduciary from self-dealing or acting with a conflict of interest. *See* 29 U.S.C. § 1106(b)(1)-(2). First, ERISA § 406(b)(1) bars a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). As the CEO and majority shareholder of Continuum, it was to Defendant's benefit and in his interest to keep Continuum operating. Thus, when Defendant failed to remit the employee contributions to the Plans and instead used them to pay Continuum's operating expenses, Defendant dealt with

the Plans' assets in his own interest in violation of § 406(b)(1). *See* Chao v. Hochuli, 244 F. Supp. 2d 92, 99 (E.D.N.Y. 2003) (finding fiduciary in breach of § 406(b)(1) where plan funds were used for the benefit of corporation partially owned by the fiduciary); NYSA-ILA Med. & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 203 (S.D.N.Y. 1999) (holding that president and sole shareholder breached § 406(b)(1) by using plan assets to pay corporate expenses); Prof'l Helicopter, 804 F. Supp. at 1452-54 (finding corporate officers breached § 406(b)(1) by failing to remit employee contributions to the plan); Solmsen, 671 F. Supp. at 946 (holding that sole shareholder violated § 406(b)(1) by using employee contributions to fund struggling corporation's business); Stuart, 2005 WL 1693939, at *6 (holding that corporate CEO violated § 406(b)(1) by using employee contributions to "continue operation of his doomed company" instead of remitting them to the plan).

In addition, ERISA § 406(b)(2) prohibits a fiduciary from "act[ing] in any transaction involving the plan on behalf of a party (or represent[ing] a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). "A fiduciary who acts in a way that adversely affects the plan, for his own benefit, acts with a conflict of interest." Stuart, 2005 WL 1693939, at *6 (citing Iron Workers Local # 272 v. Bowen, 624 F.2d 1255, 1261 n.10 (5th Cir. 1980)). The Secretary points out that Defendant

repeatedly failed to remit 401(k) Plan contributions and Health Care Plan premiums to the respective Plans and contends that "[i]n deciding not to remit these employee contributions, Defendant acted on behalf of or for the benefit of himself, the [CEO] and majority stakeholder of Continuum, as well as on behalf of and for the benefit of Continuum."  Document No. 21 at 22.  By allowing the "Plans' assets to be used for the general operation of the company, the Secretary argues, the fiduciary operated on both sides of the transaction," and "his interest in Continuum was in direct conflict with his duties to maintain the assets of the Plans."  Id.  The Court agrees that Defendant's payment of corporate debts from accounts containing unremitted employee contributions directly conflicted with the interests of the contributing Continuum employees, such that Defendant violated § 406(b)(2).  *Accord* Stuart, 2005 WL 1693939, at *6.

### 5.  ERISA § 403

In relevant part, ERISA § 403(a) mandates that "all assets of an employee benefit plan shall be held in trust by one or more trustees.  Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary. . . ."  29 U.S.C. § 1103(a).  ERISA § 403(c)(1) further provides that "the assets of a plan shall never insure to the benefit of any employer and shall be held for

the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." Id. § 1103(c)(1).

The 401(k) Plan specifically names Defendant as trustee, *see* Document No. 21 ex. F at 3, and Defendant was therefore required to hold the 401(k) Plan's assets in trust. Although the 401(k) Plan contributions withheld from participating Continuum employees' paychecks should have been held in a trust account, the uncontested summary judgment evidence is that Defendant failed to ensure that the contributions were removed from Continuum's corporate accounts. *See* Document Nos. 21 ex. D ¶¶ 14-134; 22 ¶¶ 20, 23-26.   In permitting the employee contributions to remain in Continuum's accounts, and therefore to be used to pay Continuum's expenses, Defendant inured those Plan assets to the benefit of Continuum in violation of § 403(c)(1).   *See* Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc., 352 F. Supp. 2d 794, 806 (E.D. Mich. 2004) ("A fiduciary violates [§ 403(c)(1)] if he or she uses plan assets to satisfy other business obligations.") (citing Catucci, 60 F. Supp. 2d at 203; Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1246 (S.D. W. Va. 1992)); *accord* Solmsen, 671 F. Supp. at 946; Stuart, 2005 WL 1693939, at *7; Suave, 2004 WL 503819, at *3; Eskelin v. Ranson Cos., 121 F.3d 715 (9th Cir. 1997) (unpublished); PMTA-ILA Containerization Fund v. Rose, No. Civ. A 94-5635, 1995 WL 461269, at *5 (E.D. Pa. Aug. 2, 1995).

D.   <u>Requested Relief</u>

As a result of Defendant's multiple violations of ERISA's fiduciary requirements, the Secretary requests that the Court issue a permanent injunction enjoining Defendant from violating ERISA and enjoining him from serving as a fiduciary of any ERISA-covered employee benefit plan.   Moreover, the Secretary seeks an order requiring Defendant to restore $5,824.61 to the 401(k) Plan and $25,211.16 to the Health Care Plan.   Given the seriousness of Defendant's actions, his obvious disregard of ERISA's requirements, and his failure to challenge the Secretary's evidence, the Court agrees that this remedy is appropriate.   *See* 29 U.S.C. § 1109(a); *see also* <u>Crouse</u>, 346 F. Supp. 2d at 989; <u>Hochuli</u>, 244 F. Supp. 2d at 99.

IV.   <u>Order</u>

Accordingly, it is

ORDERED that Plaintiff Secretary of Labor Elaine L. Chao's Motion for Summary Judgment (Document No. 23) is GRANTED. Defendant Don R. Johnson is permanently enjoined from serving as a fiduciary of any employee benefit plan subject to ERISA.   Moreover, Defendant Johnson is liable for losses incurred by the Plans as a result of his improper management and administration of the Plans'

assets and shall pay $5,824.61 to the 401(k) Plan and $25,211.16 to the Health Care Plan.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 30th day of August, 2005.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE