```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


IN RE:                          §
                                §
DON R. JOHNSON,                 §       CASE NO. 05-36068
                                §          (CHAPTER 7)
     Debtor.                    §
                                §
--------------------------------§
                                §
ELAINE L. CHAO, SECRETARY OF    §
LABOR, UNITED STATES            §
DEPARTMENT OF LABOR,            §       ADVERSARY PROCEEDING
                                §           NO. 05-3583
     Plaintiff,                 §
                                §
v.                              §
                                §
DON R. JOHNSON,                 §
                                §          (RELATED TO:
     Defendant.                 §       CIVIL ACTION NO. 03-5394)[1]
```

MEMORANDUM AND ORDER

Pending is Plaintiff Elaine L. Chao, Secretary of Labor, United States Department of Labor's Motion for Summary Judgment (Document No. 43). After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows:

---

[1] By Order entered December 1, 2005, the reference in Adversary Proceeding No. 05-3583 was withdrawn, and was ordered to proceed in this Court under Cause No. 03-5394. In order to avoid confusion in this Memorandum and Order between the decision and Final Judgment entered August 30, 2005 in Cause No. 03-5394, the two proceedings will be delineated by their original cause numbers.

## I. Background

The factual background of this case is set out in the Court's Order and Final Judgment dated August 30, 2005, granting summary judgment in Civil Action No. 03-5394, to Plaintiff Elaine L. Chao, Secretary of Labor, United States Department of Labor (the "Secretary"), and adjudging Defendant Don R. Johnson ("Defendant"), the CEO of Continuum Healthcare Systems, Inc. ("Continuum") and its subsidiaries, liable for breach of his fiduciary duties under ERISA, and for resulting losses to the Continuum's Secret to Success 401(k) Plan and to its Group Health Insurance Plan in the amounts of $5,824.61 and $25,211.16, respectively. The Court further enjoined Defendant from serving as a fiduciary of the Plans or any other employee benefit plan subject to ERISA.

After entry of Final Judgment, Defendant moved for a new trial based on newly discovered evidence, which was denied. The Bankruptcy reference was withdrawn on December 1, 2005, and the Secretary now moves for summary judgment that Defendant's liability stated in the Final Judgment dated August 30, 2005, in Cause No. 03-5394 is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). (Document No. 43.)

## II. Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See* id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary

3

judgment is proper. <u>Kelley v. Price Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> (citing <u>Anderson</u>, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III. <u>Discussion</u>

A. <u>Collateral estoppel</u>

Defendant opposes Plaintiff's Motion for Summary Judgment, asserting that there was evidence to prove he was innocent of the allegations, that his lawyer had let him down by not replying to the Motion for Summary Judgment in the 2003 case, and that he did the best that he knew how to do for his employees. The Secretary responds that Defendant is collaterally estopped from relitigating the facts underlying the liability adjudged against him in Cause No. 03-5394 for breaches of fiduciary duty under ERISA. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>San Remo Hotel, L.P. v. City & County of San Francisco</u>, 125 S. Ct. 2491, 2500 n.16 (2005). The

4

Supreme Court has held that collateral estoppel applies to bankruptcy dischargeability proceedings. *See* Grogan v. Garner, 111 S. Ct. 654, 658 n.11 (1991); In re Gupta, 394 F.3d 347, 349 (5th Cir. 2004). Because the prior judgment was rendered by a federal court, its preclusive effect is governed by federal law. *See* Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986). The requirements for collateral estoppel under federal law are: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) resolution of the issue must have been necessary to the previous judgment. *See* Am. Home Assurance Co. v. Chevron, USA, Inc., 400 F.3d 265, 272 (5th Cir. 2005); In re Shuler, 722 F.2d 1253, 1256 n.2 (5th Cir. 1984). The burden of proof rests on the party invoking collateral estoppel. *See* Freeman United Coal Mining Co. v. Office of Worker's Comp. Program, 20 F.3d 289, 294 (7th Cir. 1994).

Defendant complains that his attorney failed to respond to the summary judgment motion in the 2003 case, and in so doing, failed to present evidence substantiating that (1) the shortfall in the 401(k) was merely a "mis[] allocation of funds"; (2) Continuum refunded to the participants and beneficiaries the balance on all health care premiums since cancellation of the policy; and (3) the alleged wrongdoing with respect to both Plans was attributable to

5

the acts or omissions of other entities.  Document No. 45 at 2-5. An uncontested summary judgment is ordinarily given preclusive effect. *See, e.g.*, In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983) (holding the debtor's active participation in discovery during the 16 months leading up to the creditor's motion for summary judgment, to which no response was filed, warranted application of collateral estoppel); In re Staggs, 178 B.R. 767, 775, 777, 780 (Bankr. N.D. Ind. 1994)(deeming the "actually litigated" requirement satisfied under Indiana law when a party had a "full and fair *opportunity*" to litigate the issues, and concluding such an opportunity was available to the debtor who filed no response to a motion for summary judgment)(emphasis in original); In re Wien, 155 B.R. 479, 486 (Bankr. N.D. Ill. 1993)(concluding that "it would be an abuse of the doctrine" not to preclude relitigation of the factual issues when the debtor had notice of the summary judgment hearing, was represented by counsel, had an adequate opportunity to participate, and an incentive to do so); *but see* In re Silva, 190 B.R. 889, 894 (9th Cir. 1995)(declining to apply Gottheiner when the debtor did not actively participate in the summary judgment proceeding, the judgment made little reference to the debtor, and the record reflected that the wrongdoing was primarily attributable to his co-defendants); In re Dvorak, 118 B.R. 619, 626 (Bankr. N.D. Ill. 1990)("The phrase 'actually litigated' should not be read to refer

6

only to the level of independent judicial inquiry into the *prima facie* showing of facts underlying an undefended motion for summary judgment.").

No Fifth Circuit case has been found on this point, but the Fifth Circuit does accord preclusive effect to a post-answer default judgment if the movant is required to and does present sufficient evidence to satisfy its burden of proof. *Compare* In re Gober, 100 F.3d 1195, 1204-05 (5th Cir. 1996) (collaterally estopping a debtor from relitigating the factual findings underlying a punitive damage award entered on a default judgment that was imposed as a sanction for discovery violations, because the movant was nonetheless required to prove by a preponderance of the evidence that punitive damages were warranted), *abrogated on other grounds by* In re Caton, 157 F.3d 1026, 1030 n.18 (5th Cir. 1998), *and* In re Garner, 56 F.3d 677, 680 (5th Cir. 1995) (distinguishing a post-answer default judgment under Texas state law from a traditional default in which the non-answering party is deemed to have admitted the facts in the complaint), *abrogated on other grounds by* In re Caton, 157 F.3d at 1030 n.28, *with* In re Pancake, 106 F.3d 1242, 1244-45 (5th Cir. 1997)(finding collateral estoppel inapplicable when the record on appeal contained no findings relating to the alleged fraud, though holding that it could be appropriate if the creditor later "produce[d] record evidence demonstrating that the state court conducted a hearing in

which [the creditor] was put to its evidentiary burden"). "[A] default where the defendant's answer places the merits of the plaintiff's cause of action at issue, where judgment cannot be entered on the pleadings, and therefore, where a plaintiff in such a case must offer evidence to prove his case is more than just a garden variety default judgment." In re Harrison, 180 Fed. Appx. 485, 487 (5th Cir. Apr. 25, 2006) (unpublished). In such a circumstance, the issues resolved have been "fully and fairly litigated for purposes of collateral estoppel." Id. at 488 (internal quotations omitted); *see also* In re Garner, 56 F.3d at 680.

Similarly, an unopposed summary judgment may be granted only if the movant satisfies its "burden of establishing the absence of a genuine issue of material fact, and unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995)(citing Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985)); *see also* FED. R. CIV. P. 56(e) (stating an unopposed summary judgment may be granted only "if appropriate"). "Unlike a true default situation, where the defendant is deemed to have admitted whatever allegations of fact are properly pled in the plaintiff's complaint, a decision entered after an unopposed motion for summary judgment or a one-sided trial requires the victor to actually be able to produce evidence, of one type or another, and not just allegations, to

support the court's decision." In re Staggs, 178 B.R. at 777; *see also* Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990)(distinguishing summary judgments from traditional default judgments). Thus, a summary judgment, whether opposed or not, is a judgment on the merits which may only be granted if the movant presents evidence establishing its entitlement to judgment as a matter of law. Such a judgment is therefore analogous to the one-sided trials associated with post-answer default judgments. The Court therefore concludes that collateral estoppel applies to issues actually and necessarily resolved in granting an uncontested summary judgment, just as the Fifth Circuit has applied collateral estoppel to post-answer defaults rendered after production of evidence proving the movant's entitlement to judgment.

The summary judgment Memorandum and Order and the accompanying record in Cause No. 03-5394 contained abundant evidence, including an affidavit by an Employee Benefit Security Administration investigator, paycheck and other accounting records, Defendant's deposition, Defendant's answers to interrogatories, and correspondence between Continuum and the health insurance provider, all of which were cited in and underlay the Court's conclusions regarding the fact and extent of Defendant's liability. Specifically, the Court concluded that Defendant (1) failed timely to remit contributions to the Plans; (2) commingled contributions to the

Plans with corporate funds; (3) used unremitted funds to cover corporate expenses; (4) failed to follow up on problems regarding the allocation of contributions; and (5) failed to refund fully to participants and beneficiaries those amounts that were misallocated. With respect to the Health Care Plan, Defendant additionally (1) continued withholding amounts for premiums even after the plan had been terminated; and (2) failed timely to notify employees that the plan was terminated, causing them to incur over $90,000 in unpaid health care claims. Based on the summary judgment record and the authorities discussed above, Defendant is precluded from relitigating his liability in the aggregate amount of $31,035.77, plus interest, for breaching his fiduciary duties under ERISA.

Moreover, the alleged inadequacy of Defendant's counsel in the earlier case does not preclude the application of collateral estoppel.[2] It is essential to our representative system that a client is "bound by the acts of his attorney-agent . . . ." Irwin v. Veterans Admin., 111 S. Ct. 453, 456 (1990). "That an attorney's conduct of the suit is inadequate may be grounds for a malpractice action against the attorney, but it is certainly no basis for requiring the [plaintiff] to pay the price of opposing

---

[2] Nor is Defendant's "right to due process" implicated by his attorney's allegedly inadequate representation. Because there is no right to counsel in civil proceedings, there is no derivative right to effective assistance of counsel in such cases. *See* F.T.C. v. Assail, Inc., 410 F.3d 256, 267 (5th Cir. 2005).

counsel's dereliction." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 709 (5th Cir. 1994). Moreover, the record reflects that Defendant, through his counsel, had a full and fair opportunity to litigate the issue. *See, e.g.*, Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860, 862 (5th Cir. 1985)(applying this standard). During the nearly fourteen months preceding the filing of the summary judgment motion in the earlier case, Defendant's counsel conferred with opposing counsel, responded to discovery requests, and attended scheduling conferences. *See* Document No. 16; Document No. 19; Document No. 21 exs. B, C, D, E. That Defendant through his counsel bypassed the opportunity to oppose the Secretary's motion and elected instead to attack the motion indirectly by filing motions to stay and for a new trial, does not suggest that the opportunity to litigate the motion was lacking. *Cf*. In re Gottheiner, 703 F.2d at 1140 ("That after many months of discovery [the debtor] decided his case was no longer worth the effort does not alter the fact that he had his day in court" when the debtor had participated in the underlying litigation for sixteen months). Defendant's objections that his attorney mishandled his case in Cause No. 03-5394 are not grounds for now revisiting or for making a collateral attack upon the Final Judgment entered in that case in August, 2005.

B.  <u>Non-dischargeability under 11 U.S.C. § 523(a)(4)</u>

The Secretary asserts that the facts underlying the uncontested summary judgment adjudging Defendant to have breached various fiduciary duties under ERISA establish as a matter of law that Defendant committed "defalcations" in his capacity as a fiduciary. Document No. 44 at 11 n.6, 15-18. Section 523(a)(4) of the Bankruptcy Code excludes from discharge in bankruptcy any debt arising from "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To invoke this provision, a creditor must prove by a preponderance of the evidence that (1) the debt arose in connection with an express or technical trust; (2) the debtor acted in a fiduciary capacity with respect to the trust; and (3) the debtor committed a defalcation within the meaning of the Bankruptcy Code (the "Code"). *See* <u>Grogan</u>, 111 S. Ct. at 661 (adopting the preponderance of the evidence standard); <u>In re Gupta</u>, 394 F.3d 347, 350 (5th Cir. 2004)(citing <u>Davis v. Aetna Acceptance Co.</u>, 55 S. Ct. 151, 154 (1934), for the requirements that the debtor be a fiduciary of a technical trust); <u>In re Felt</u>, 255 F.3d 220, 226 (5th Cir. 2001)(discussing the defalcation element).

To qualify as a technical trust under § 523(a)(4), "a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties." <u>In re Tran</u>, 151 F.3d 339, 342-43 (5th Cir. 1998). In this case, the assets of the Plans--including those contributions withheld from employee wages that were commingled

with corporate funds and never distributed to the Plans--constitute the trust *res*. See 29 C.F.R. §§ 21510.3-102(a), (b)(1) (defining contributions withheld from wages as assets of a pension benefit plan "as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets[,]" but no later than "the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant (in the case of amounts withheld by an employer from a participants' wages)"); id. § 21510.3-102(c) (prescribing the date upon which unremitted contributions withheld from wages become assets of a welfare benefit plan as no later than "90 days from the date on which . . . such amounts would otherwise have been payable to the participant in cash"); *see also* United States v. Grizzle, 933 F.2d 943, 946-47 (11th Cir. 1991)(holding unremitted employee contributions to be assets of an employee benefit plan); In re Lenox Healthcare, Inc., 343 B.R. 96, 102 (Bankr. D. Del. 2006) ("It is true that employee wages which are withheld for the purpose of contributing to an employee benefit plan are assets of the plan held in trust for the employees from the moment they are withheld."); In re Gunter, 304 B.R. 458, 461 (D. Colo. 2003) (holding the withheld contributions were plan assets pursuant to § 21510.3-102, and the diversion of these contributions to the corporate accounts constituted defalcation). Additionally, Defendant was the named trustee of the Plans, such that he was

a fiduciary subject to ERISA and the trust-like duties prescribed therein. Document No. 37 at 10-11 (quoting 29 U.S.C. § 1002(21)(A)); see also Mertens v. Hewitt Assocs., 113 S. Ct. 2063, 2073 (1993)(explaining that because "'ERISA . . . abounds with the language and terminology of trust law[,]'" the common law of trusts shapes the interpretation of the rights and duties prescribed within it (quoting Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948, 954-55 (1989))); id. at 8-10 (holding the Plans to be covered by ERISA). The requirements of a technical trust and fiduciary status thereto are therefore satisfied by Defendant's status as named trustee and fiduciary of the Plans.

Furthermore, Defendant's adjudged acts establish that he committed defalcations within the meaning of Section 523(a)(4). Although "defalcation" is not defined in the Code, the Fifth Circuit has interpreted the term as a willful neglect of fiduciary duty tantamount to recklessness. See In re Schwager, 121 F.3d 177, 185 (5th Cir. 1997)(explaining that "[w]hile defalcation may not require actual intent, it does require some level of mental culpability"); In re Davis, 352 B.R. 779, 782 (Bankr. W.D. La. 2006). Whether Defendant recklessly breached his duties as an express fiduciary and trustee of the Plans "is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known[,]" without analyzing the debtor's intent or motive. See In re Felt, 255 F.3d at 226.

14

The Court's Memorandum and Order signed August 30, 2005, observed the "seriousness of Defendant's actions [and] his obvious disregard of ERISA's requirements . . . ." Although Defendant was aware of issues relating to the allocation of 401(k) contributions, he took no action to investigate the problems and instead permitted those contributions to be commingled with corporate accounts and to be used for paying corporate expenses, which arguably advanced his own pecuniary interests as Continuum's primary shareholder and CEO to the detriment of plan participants and beneficiaries. *Cf.* In re Moreno, 892 F.2d 417, 421 (5th Cir. 1990)(concluding that a corporate officer's lending of corporate funds to himself and to entities over which he maintained control constituted willful neglect of his fiduciary duties). Defendant acted with similar disregard with respect to the Health Care Plan, for which he habitually failed to remit premiums in a timely fashion, which led to its cancellation, failed to notify participants of the plan's termination, with a resulting loss to participants of over $90,000 in unpaid health claims, and withheld contributions from employee wages even after the Health Care Plan was terminated. The unremitted contributions to the Health Care Plan were likewise used to cover corporate expenses in further violation of Defendant's duties as an ERISA fiduciary. In sum, and regardless of Defendant's interest or motive, his conduct at a minimum reflects a willful and reckless disregard of his express

responsibilities as named trustee and fiduciary to the Plans or, in the language of § 523(a)(4), "defalcation while acting in a fiduciary capacity." Accordingly, Defendant's liability stemming therefrom is non-dischargeable in bankruptcy.

IV. Order

It is therefore ORDERED that the Elaine L. Chao, Secretary of Labor, United States Department of Labor's Motion for Summary Judgment (Document No. 43) is GRANTED, and Defendant Don R. Johnson's liability adjudged in Civil Action No. 03-5394, in the amount of $5,824.61 to the Continuum Healthcare Systems, Inc. Secret to Success 401(k) Plan, and $25,211.16 to the Continuum Healthcare Systems, Inc. Group Health Insurance Plan, for a total of $31,035.77, plus interest at the rate of 3.88% per annum from August 30, 2005 until paid, as adjudged in the Final Judgment dated August 30, 2005, is hereby excepted from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(4).

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 26th day of February, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE